IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MANUELA ESTRADA, ) | |
| ) | |
| Plaintiff, ) | No. 10 C 1639 |
| ) | |
| v. ) | |
| ) | Magistrate Judge Schenkier |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER[1]

In this social security disability insurance benefit appeal, plaintiff Manuela Estrada moves for summary reversal and/or remand of a final decision by the Commissioner of the Social Security Administration ("SSA"), pursuant to 42 U.S.C. § 405(g) (doc. # 19). In that decision, the Administrative Law Judge ("ALJ") found Ms. Estrada eligible for benefits as of December 29, 2008, but denied her benefits for the period of June 27, 2006 (her alleged disability onset date) to December 28, 2008. The Commissioner has filed a cross-motion for summary judgment to affirm the decision (doc. # 27). For the reasons set forth below, we deny the Commissioner's motion, we grant the plaintiff's motion, and we reverse the final decision and remand for further proceedings.

**I.**

We begin with the procedural history of this case. Ms. Estrada applied for SSI on June 27, 2006, alleging a disability onset date of November 1, 2001. Her application was denied initially on

---

[1] On May 11, 2010, by the consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to this Court for all proceedings, including entry of final judgment (doc. ## 13, 15).

September 14, 2006, and again upon reconsideration on November 3, 2006 (R. 113, 120). Thereafter, Ms. Estrada filed a timely request for a hearing, which was granted. The hearing took place before Administrative Law Judge ("ALJ") Helen Cropper on March 9, 2009. At the hearing, the ALJ heard from Ms. Estrada, as well as medical expert ("ME"), Dr. William Newman, and vocational expert ("VE"), Cheryl R. Hoiseth. During closing arguments, Ms. Estrada amended the alleged disability onset date to June 27, 2006, the date on which her SSI claim was filed.

On March 30, 2009, the ALJ issued a written decision (R.10-28), finding that Ms. Estrada was disabled as of the date she reached the age of 50 (December 28, 2008), but that prior to that time, Ms. Estrada was not disabled because she could do simple, unskilled, repetitive sedentary work that exists in substantial numbers in the national economy. On May 27, 2009, Ms. Estrada appealed the ALJ decision to the Appeals Council of the SSA (R. 5). On February 23, 2010, the Appeals Council denied her request for review (R. 1-3), making the ALJ's decision the final decision of the Commissioner under 42 U.S.C. § 405(g). *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

## II.

We now summarize the administrative record. We set forth the general background evidence concerning Ms. Estrada's history and medical complaints in Part A, followed by the objective medical evidence in Part B. In Part C, we discuss the hearing testimony, and in Part D, we address the ALJ's written opinion.

## A.

Ms. Estrada was born on December 28, 1958 (R. 39). She graduated from high school and studied at Northeastern University, until she dropped out in 1978 (R. 47). Ms. Estrada is a single mother of two adult daughters (R. 39). Ms. Estrada's elder daughter has two young children (*Id*).

2

Ms. Estrada's younger daughter suffers from spina bifada and is confined to a wheelchair (R. 39, 43). Ms. Estrada lived with and cared for her disabled daughter until she reached the age of 19 (R. 41). Thereafter, Ms. Estrada's daughter moved into an apartment within a facility for the disabled (R. 39-40). Since then, the Department of Human Services has paid Ms. Estrada $295.00 every two weeks to care for her daughter for 15 hours each week (R. 41, 46). Ms. Estrada's elder daughter and granddaughter moved in with her for a brief period in 2003 (R.40). Also in 2003, after taking a three-month course, Ms. Estrada became certified as a nursing assistant (R. 48). However, she believes that her certification subsequently expired (*Id.*). Ms. Estrada was living alone at the time of the hearing (R. 39).

Ms. Estrada's past work experience includes home care for her ailing mother, as well as clerical work and outreach for the Chicago Board of Education (R. 51-56, 85). Ms. Estrada was previously employed by the State to provide transportation and care for her cancer-stricken mother, but stopped doing this three years prior to the hearing (R. 51-52, 55). Ms. Estrada then worked for two years as an assistant in Lincoln Park High School's attendance office (R. 52, 54). Ms. Estrada's responsibilities there included making phone calls, doing paperwork, and patrolling the hallways during the academic year (R. 52-53). Ms. Estrada described this job as "frustrating," and related that she quit because she "thought [her] life was in threat" after a student there threatened her and the administration refused to grant her a transfer (R. 53-54). Ms. Estrada later worked as part of a 90-day school outreach program, which sent her to interview students at two local schools where "there ha[d] been a murder" (R. 98). She testified that she walked out on the program after only two months, but later returned and finished the project (R. 99-100).

Ms. Estrada testified that she has suffered symptoms of obsessive compulsive disorder "since [she] was a little girl" (R. 86), and attempted suicide several times between the age of 15 and her last psychiatric hospitalization at age 21 (R. 78-79). She also reported a remote alcohol problem (78). Ms. Estrada described her adult obsessive behaviors as tracing, counting, praying, pacing (R. 83), and "checking the stove 50 times" (R. 86-87). She explained that, in past jobs, she just "picked up and left" (R. 74) because she "couldn't handle the stress" (R. 79).

Ms. Estrada also suffers from back and leg pain, which she has treated using injections of pain relievers and steroids (R. 81-82). She completed a pain management program at the Rehabilitation Institute of Chicago ("RIC"), where she was taught moving, breathing, and relaxation techniques that were difficult for her to master because of her OCD (R. 64-66). Ms. Estrada slipped and fell in May 2007, exacerbating the pain in her lower back and right leg (R. 66-67). She testified that she experiences constant back pain and related leg pain, as well as muscle spasms (R. 67, 69).

In essence, Ms. Estrada claims that she can no longer work because her back pain and leg pain prevent her from sitting, standing, or walking for extended periods (*Id.*), and her mind is filled with obsessive thoughts (R. 80).

### B.

The objective medical evidence documents many of Ms. Estrada's complaints, which can be grouped into: (1) anxiety and obsessive compulsive disorder ("OCD"), (2) back and related leg pain, (3) problems with both knees, and (4) diverticulosis, as well as a series of other ailments.

1.

In 2006, Dr. Anne Franke Locatelli of Northwestern Memorial Hospital ("NMH") reported on a welfare form[2] that Ms. Estrada had been diagnosed with "mild anxiety," for which she had been prescribed Ativan to "use sparingly as needed" (R. 479). While being treated for other problems at the Erie Family Health Center ("EFHC"), Ms. Estrada complained of emotional problems to Dr. Silesia Bailey and was referred to a psychiatrist (R. 458, 673-74).

On June 26, 2006, Ms. Estrada saw Dr. Mercedes Martinez at ERHC for an initial evaluation, where she complained of obsessive thoughts and compulsive behaviors which interfered with her daily activities (R. 465). Ms. Estrada also reported past, but not current, feelings of depression (R. 466). She described suicide attempts in the distant past, a past hospitalization for "alcohol-agitation," and a history of alcohol and substance abuse ending more than 15 years earlier (R. 465-471). Dr Martinez described Ms. Estrada as anxious, but otherwise her mental status findings were normal (R. 472). Dr. Martinez assessed Ms. Estrada's GAF score as 50 (R. 473).[3] Dr. Martinez also diagnosed Ms. Estrada with anxiety NOS/OCD (*i.e.*, "not otherwise specified/obsessive compulsive disorder), recommended psychotherapy, and advised her to consider taking psychotropic medications (*Id.*).

On July 3, 2006, Ms. Estrada followed up with Dr. Martinez, who described her as "reluctant to try [psychotropic] medication," and noted that Ms. Estrada should consider Lexapro to treat her

---

[2] Shortly before filing her SSI claim, Ms. Estrada filed a welfare application. She asked Dr. Locatelli to complete this medical evaluation form in connection with that welfare application (R. 16).

[3] GAF, or global assessment of functioning, is a scale from 0 to 100 in which higher scores indicate greater levels of functioning. *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (4th ed. Text Revision 2000) ("DSM-IV-TR"). A GAF score of 50 falls at the top of a range that is characterized by "serious" symptoms or limitations. *Id.*

5

OCD symptoms and try cognitive behavior therapy (R. 462). On July 17, 2006, Ms. Estrada again saw Dr. Martinez, to whom she reported a remote history of bulimia as well as several phobias and obsessive behaviors at home (R. 462-464). These behaviors included counting, tracing, and repeatedly checking the stove for fear that her house would burn down (R. 464).

On September 5, 2006, Ms. Estrada underwent a consultative psychiatric evaluation with Dr. Robert Buchanan. She reported a remote history of psychiatric hospitalizations occurring on or before 1984, and stated that she had seen Dr. Martinez on a weekly basis for three months, but stopped going to him because she could not afford it (R. 487). Ms. Estrada also reported that Dr. Martinez had prescribed her Lorazepam and given her samples of Lexapro, which she had stopped taking because it "'made [her] suicidal'" (*Id.*). However, she admitted to taking Valium three or four nights each week at bedtime to help her sleep (*Id*). Ms. Estrada reported that she has had a long history of episodic depression and obsessive compulsive behavior (R. 487-488). She reported "mild auditory hallucinations" and feelings of paranoia (R. 488). Dr. Buchanan described Ms. Estrada's mood as "moderately depressed" and diagnosed her with recurrent major depression, OCD, a history of polysubstance abuse, and a mixed personality disorder (R. 489).

On December 7, 2006, Ms. Estrada participated in a clinical research study, during which she was interviewed and evaluated (R. 92-93). Dr. John E. Calamari, a psychologist, reported in a letter dated February 14, 2008, that he had reviewed information gathered in Ms. Estrada's interviews and concluded that "Ms. Estrada met the diagnostic criteria for obsessive compulsive disorder (severe) and social anxiety disorder (mild to moderate severity)" (R. 592). The letter also stated that the recipient should "keep in mind that [these] . . . clinical findings occurred in the context of our research protocol and a single encounter with Ms. Estrada" (R. 593).

In a December 13, 2006 follow-up with Dr. David Walega, whom Ms. Estrada was seeing for pain management, Ms. Estrada reported that she was not being treated or medicated for her OCD symptoms (R. 582). Dr. Walega described Ms. Estrada as mildly anxious (*Id.*).

During her July 9 to July 12, 2007 admission to Northwestern Memorial Hospital ("NMH") for abdominal pain and nausea, Ms. Estrada was prescribed alprazolam (Xanax) for her anxiety, along with her previously prescribed Valium, to take as needed (R. 555). However, the pharmacy records show that Ms. Estrada filled no prescriptions for Xanax, and had not previously filled a prescription for Valium (R. 750-754). Thereafter, on September 11, 2007, Ms. Estrada filled a 20 tablet prescription for Diazepam (generic for Valium) (R. 751).

On November 1, 2007, Ms. Estrada sought treatment for anxiety, OCD, and chronic pain at the Stone Institute of Psychiatry, an affiliate of NMH. She noted that, as part of a chronic pain program she was involved in at RIC, she was required to seek mental-health treatment (R. 613). Ms. Estrada reported taking Valium around five times per week and a "migraine medicine" which she was unable to identify (*Id.*). Ms. Estrada was described as anxious and reported being fearful, feelings of guilt, increased appetite, lack of concentration and a loss of energy (R. 616). She was advised to seek a course of cognitive behavior therapy (R. 623-624).

Between December 4, 2007, and March 4, 2008, Ms. Estrada generally visited her therapist at the Stone clinic weekly, arriving on time or early (R. 629-640). She was trained in methods to decrease her anxiety level and reduce the frequency of her compulsive behaviors (R. 635-639). On January 15, 2008, Ms. Estrada was notified that she could now participate in the RIC comprehensive chronic pain clinic (R. 635). However, there is no evidence that she enrolled in that clinic.

On January 9, 2008, Ms. Estrada filled a prescription from Dr. Locatelli for seven tablets of the sedative Ambien (R. 754).

On February 7, 2008, Ms. Estrada's treatment plan at the Stone Institute was evaluated. Ms. Estrada was assessed as making minimal progress toward her goals, despite attending weekly individual psychotherapy sessions (R. 629). Ms. Estrada was advised to continue her treatment (*Id.*). On October 16, 2008, Ms. Estrada's therapists at the Stone Institute, including Rodney Benson, PhD, prepared a letter for Ms. Estrada which summarized her treatment and described the functional limitations that Ms. Estrada experiences as a result of her OCD (R. 696). Dr. Benson assessed Ms. Estrada's GAF as 65, and stated that "Ms. Estrada is not able to commit to full-time employment due to her Obsessive-Compulsive Disorder" (*Id.*).[4] On October 31, 2008, Ms. Estrada's treatment plan was reviewed (R. 740). The psychologist opined that Ms. Estrada had made limited progress in reaching her goals, despite weekly sessions of both individual and group psychotherapy (*Id.*). Ms. Estrada was advised to continue attending both types of sessions (*Id.*).

On November 28, 2008, Ms. Estrada filled a prescription for 15 tablets of Lorazepam (a generic for Ativan, which is used to treat anxiety) (R. 752). On December 1, 2008, Ms. Estrada filled a 30 tablet prescription for Diazepam (generic for Valium) (*Id.*).

## 2.

Ms. Estrada also suffers from back pain and related leg pain. Between February 25, 2004 and March 15, 2006, she was treated at RIC, initially for neck pain, but later primarily for lower back

---

[4] A GAF score of 65 falls midrange within the 61-70 decile, indicating "[s]ome mild symptoms (*e.g.* depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning *(e.g.* occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV-TR at 34

pain (R. 347-454). On several occasions, Ms. Estrada reported to RIC that her back pain had improved as a result of physical therapy ("PT") or other conservative treatment ( R. 349, 366, 400, 402, 404, 421, 423, 425, 444). Ms. Estrada was trained in a home exercise program ("HEP") at RIC, which she reported performing regularly (R. 347-365, 376-79, 400, 421, 425, 432, 444). The objective musculoskeletal and neurological findings reported by RIC physicians showed fairly minor abnormalities (R. 347-454). After Ms. Estrada continued to complain of back pain, she was referred to the chronic pain program (R. 397).[5]

On June 5, 2006, during her first visit with Dr. Bailey at ERHC, Ms. Estrada reported chronic lower back pain, among other complaints (R. 456). Dr. Bailey's physical examination findings were generally normal, though Ms. Estrada was assessed as obese, with a reported height of 62 inches and a weight of 184 pounds (R. 456-457, 670-673).

On the 2006 welfare form (discussed above), Dr. Locatelli listed lower back and pelvic pain among Ms. Estrada's diagnoses and/or complaints (R. 477). However, Dr. Locatelli also noted that Ms. Estrada's ambulation was normal (R. 478).

On June 23, 2006, Ms. Estrada attended a free chiropractic consultation at Northern Chiropractic Clinic, where she complained of a history of severe lower back pain that remained unrelieved despite her previous treatments and medication (R. 480-485). An x-ray was taken of Ms. Estrada, which reportedly showed degenerative changes (R. 485).

---

[5] We note that, part way through Ms. Estrada's treatment at RIC, she expressed a need to obtain new medical insurance (*See* R. 390). On February 8, 2006, Ms. Estrada explained to the Outpatient Care Manager at RIC that she would be losing her medical insurance on February 28, 2006 (her disabled daughter's birthday) and would need to find some other way to pay for her treatment (R. 390). The Outpatient Care Manager then considered the possibility of offering Ms. Estrada charity care (*Id.*).

On June 26, 2006, Ms. Estrada saw Dr. Bailey and complained of continuing back pain. Dr. Bailey referred her to Fantus pain clinic, a Stroger Hospital affiliate (R. 459). On August 14, 2006, Ms. Estrada visited Fantus, where she complained of lower back pain that sometimes radiated down her left leg (R. 520-23). Ms. Estrada reported that this pain was unrelieved by medication or prior conservative treatment, including epidural steroid injections (R. 522). The neurological findings for Ms. Estrada were essentially normal (R. 521-523). The physician administered a trigger point injection and scheduled a future facet joint injection for Ms. Estrada (R. 523). The record shows no other documented treatment for Ms. Estrada at Stroger Hospital or any Fantus Clinic.

On September 29, 2006, Ms. Estrada had a lumbar magnetic resonance imaging ("MRI") at NMH, which showed multiple degenerative changes, the most severe being exhibited at the L4-L5 (R. 649-650). This level showed a protrusion and a tear that possibly affected the nerve root. On October 19, 2006, Ms. Estrada had a lumbar x-ray that also showed degenerative changes (R. 652).

On October 25, 2006, one of Ms. Estrada's treating physicians[6] completed a spinal impairment form for Ms. Estrada, which reported that Ms. Estrada had been diagnosed with lower back pain and anxiety (R. 643). The form described Ms. Estrada's ambulation as normal and unassisted, but noted her slow gait (*Id.*).

Ms. Estrada later began treatment for pain at NMH, which was provided or supervised by pain specialist, Dr. David Walega. The notes for Ms. Estrada's initial visit with Dr. Walega were never submitted. However, at a November 28, 2006 follow-up, Ms. Estrada reported a significant decrease in pain after she received an injection, but not total relief (R. 578). The objective

---

[6] This physician cannot be identified from the record because his or her signature on the form is illegible.

musculoskeletal and neurological findings were normal (*Id*). Dr. Walega administered a trigger point injection and noted that a facet joint injection might be recommended in the future (*Id.*)

On December 13, 2006, Ms. Estrada had another follow-up with Dr. Walega, where she again reported significant pain relief after her second trigger point injection (R. 582-583). Ms. Estrada reported that she had been performing her HEP as instructed and using over-the-counter pain medicine (R. 582). The objective findings for Ms. Estrada remained stable (*Id.*). Dr. Walega administered a facet joint injection (*Id.*). Shortly thereafter, Ms. Estrada reported complete pain relief (*Id.*). However, Ms. Estrada returned approximately 45 minutes after discharge complaining of dizziness, headache, and nausea (*Id.*). Dr. Walega believed Ms. Estrada's symptoms were likely caused by a reaction to the Fentanyl she was given during the procedure (*Id.*).

Between December 2006 and June 2007, Ms. Estrada had no other documented treatment at NMH or anywhere else. On June 20, 2007, Ms. Estrada had a second lumbar MRI at NMH. The radiologist noticed that the degenerative changes at L4-L5 had progressed since the last MRI, but the findings at other levels remained stable (R. 564-565).

On June 28, 2007,[7] Ms. Estrada saw Dr. Walega for a follow-up and complained of lower back pain, despite her adherence to her HEP (R. 567-570). Ms. Estrada reported that she took over-the-counter medication when the pain was "really bad" (R. 568). The examination findings were stable, and Dr. Walega administered a facet joint injection, then asked Ms. Estrada to return for a two-week follow-up (R. 568-569).

---

[7] The ALJ's decision erroneously lists the date of this examination as July 24, 2007 (*See* R. 19).

11

On July 3, 2007, Ms. Estrada had another lumbar MRI at NMH. The findings were stable as compared to her previous MRI (R. 459). On July 24, 2007,[8] Ms. Estrada again saw Dr. Walega (R. 557-58). She reported that her pain had increased in May 2007, because she slipped and wrenched her back (R. 557). Ms. Estrada reported that she was in constant and severe pain that radiated primarily to the right side of her back, and that this pain was unrelieved by over-the-counter pain medication (*Id.*). Dr. Walega administered a facet joint steroid injection and asked Ms. Estrada to return in two weeks (R. 557-558).

On August 3, 2007, Ms. Estrada returned to Dr. Walega for the follow-up, complaining of a continuing headache on her left side, which was relieved by Fioricet (R. 658). Ms. Estrada reported that her physical therapy ("PT") brought periods of pain relief during and after treatment, but symptoms would return later on the same day (*Id.*). At Ms. Estrada's request, Dr. Walega provided a referral to the RIC PT department (R. 658-659). He also added a prescription for the muscle relaxant, Skelaxin (R. 658). Dr. Walega asked Ms. Estrada to follow-up with him if symptoms worsened or failed to improve, though he noted that she had "unexpected/unusual response to nearly all treatment to date" (R. 658-659). Dr. Walega advised Ms. Estrada to continue with conservative treatment, but cautioned against additional injections, given Ms. Estrada's reported side effects (R. 658). On September 11, 2007, Ms. Estrada filled a 20 tablet prescription for the muscle relaxant, Diazepam (generic for Valium) (R. 751).

On September, 12, 2007, Ms. Estrada went to the RIC PT clinic, where a physician ordered a repeat MRI and advised Ms. Estrada to return after the test was completed (R. 587). On September 26, 2007, Ms. Estrada returned to the clinic and was advised to continue PT, consider trying the

---

[8] The ALJ's decision erroneously lists the date of this examination as June 28, 2007 (*See* R. 18).

medication, Lyrica, and consider consulting a doctor at an acupuncture clinic (R. 588). Ms. Estrada was also referred to the RIC chronic pain program (*Id.*).

On September 13, 2007, Dr. Locatelli partially completed an impairment form for Ms. Estrada, which stated that Ms. Estrada was being treated for lower back pain/sciatica, anxiety, possible ADHD, and diverticulosis (R. 595-98).

On October 14, 2007, according to partial records, Ms. Estrada visited NMH's emergency room with complaints of musculoskeletal pain and was told to follow-up with her primary physician (R. 562). On November 11, 2007, Ms. Estrada returned to the emergency room and was treated for a kidney or urinary tract infection (R. 563).

On November 16, 2007, Ms. Estrada was again examined at RIC and the recommended treatment was the same (R. 589). Ms. Estrada was asked to follow-up in two months (*Id.*).

On February 5, 2008, Ms. Estrada had another lumbar MRI performed, after she complained that her back pain had increased due to PT (R. 664-65). The radiologist opined that the degenerative changes had slightly progressed since her last MRI (R. 665).

On September 18, 2008, Ms. Estrada had a follow-up visit at NMH with orthopedic specialist, Dr. Michael Haak (the notes of prior visit(s) were not submitted) (R. 693). Ms. Estrada reported that her treatment since November 2007 had provided little benefit to relieve her increasing back and leg pain, so Dr. Haak recommended that Ms. Estrada consider a lumbar spinal fusion (*Id.*). Dr. Haak invited her to return, if she intended to schedule the procedure (*Id.*).

On October 3, 2008, Ms. Estrada apparently had a trigger point injection at NMH's outpatient pain clinic, which was administered or supervised by Dr. Walega (though the record of that procedure was not submitted) (R. 757). On December 1, 2008, Ms. Estrada filled her first

prescription for Fioricet and a prescription for generic Flexeril, both 30 tablets (R. 752). On February 1, 2009, she filled a prescription for 21 tablets of Lyrica (R. 754).

On February 3, 2009, Ms. Estrada returned to NMH's pain clinic and reported that the trigger point injection she received on October 3, 2008, had given her "almost 100% pain relief," but her symptoms gradually returned during the past month (R. 757). Ms. Estrada reported that she had been taking the narcotic-level analgesic, Dilaudid, as well as over-the-counter Tylenol, but had received only minimal pain relief (*Id.*). However, the pharmacy records do not show that Ms. Estrada filled any prescriptions for Dilaudid during this time. Ms. Estrada's musculoskeletal and neurological examination findings were generally normal, though Ms. Estrada exhibited increased tenderness in her back, as well as decreased sensation to a pin prick in her right leg (R. 759-65). The physician administered a lumbar steroid injection and advised Ms. Estrada to follow-up in two weeks (R. 759-60). On February 18, 2009, Ms. Estrada returned and reported no improvement as a result of the lumbar injection (R. 762-763). The physician administered a second injection and suggested that Ms. Estrada obtain a surgical consultation (R. 764-765).

As discussed below, on March 9, 2009, Dr. Newman testified that Ms. Estrada suffers from degenerative disc disease at various levels of her lumbar spine, as well as a mild spondylolithesis (R. 90). He also testified that the examinations findings for Ms. Estrada have shown no significant persistent or consistent neurological deficits and that an electromyography ("EMG") of Ms. Estrada's right leg was negative (*Id.*).

### 3.

Ms. Estrada also has problems with both knees, the most significant affecting her left knee. On March 6, 2008, Ms. Estrada had an MRI of her right knee. The results showed an oblique tear

of the meniscus, ganglion cysts and abnormal cartilage. As discussed below, On March 9, 2009, Dr. Newman testified that abnormalities in Ms. Estrada's left knee were significant enough to limit her ability to stand or walk for prolonged periods (R. 90).

### 4.

Ms. Estrada suffers from diverticulosis and a series of other ailments. Ms. Estrada had a normal EGD in 1984 (R. 571), and a minor kidney or urinary tract surgery in 1987 (R. 577). Thereafter, Ms. Estrada underwent a short course of physical therapy at NMH to improve muscle tone in her pelvic floor (R. 575-76). Ms. Estrada also made complaints of musculoskeletal pain to Dr. Locatelli (R. 289, 333, 337, 342). On January 17, 2006, after complaining of acute abdominal pain, Ms. Estrada was advised to visit the emergency room to rule out appendicitis (R. 295).

On July 25, 2006, Ms. Estrada went to the emergency room of St. Elizabeth's hospital complaining of shortness of breath and a sore throat (R. 524-535). She was diagnosed with asthma exacerbation and treated using oral Prednisone (*Id.*). On Ms. Estrada's August 7, 2006 visit to Dr. Bailey, he reported that her lungs were clear and Ms. Estrada's asthma attack had been caused by her daughter's new cat (R. 678).

On July 5, 2007, Ms. Estrada went to NMH's emergency room with complaints of headache and nausea (R. 551). She was advised to take Zofran for nausea and Excedrin for pain, and to follow-up with the pain clinic (*Id.*). The following day, Ms. Estrada filled a prescription for 30 tables of Meloxicam (a generic for Mobic) (R. 751).

From July 9 to July 12, 2007, Ms. Estrada was admitted for treatment of abdominal pain and nausea (R. 554). She also complained of headache pain and increased back pain after a lumbar puncture (R. 552). A July 9, 2007, CT scan of Ms. Estrada's abdomen was consistent with

15

diverticulosis (R. 554-555). Ms. Estrada was also treated for a urinary tract infection (R. 554). After her condition improved, Ms. Estrada was released with follow-up instructions and the prescription for an antibiotic to treat diverticulosis and Fioricet for her headache (as well as alprazolam (Xanax) for anxiety and her previous prescription for Valium, as discussed above) (R. 555). She was asked to follow-up in the gastrointestinal department, as well as with her primary physician, the pain clinic, and the urology department (R. 556). The records show that, on July 27, Ms. Estrada filled two prescriptions for antibiotics, but did not fill the prescription for Fioricet (R. 751).

On September 25, 2007, Ms. Estrada had a colonoscopy at NMH that showed severe diverticulosis (R. 559-561). She was advised to remain on a high-fiber diet and use Metamucil as needed to prevent constipation (R. 560).

On November 11, 2007, Ms. Estrada went to NMH's ER and was treated for a kidney or urinary tract infection (R. 563). On January 4, 2008, Ms. Estrada had a CT of her abdomen which showed diverticulosis but a normal appendix (R. 661-663). On June 9, 2008, Ms. Estrada filled a 30-tablet prescription for Elavil (Amytriptyline) and on June 17, 2008, Ms. Estrada filled a 30-tablet prescription for the cholesterol medication, Simvastatin (R. 751).

### C.

At the hearing on March 9, 2009,[9] Ms. Estrada testified that she is able to care for her disabled daughter for 15 hours per week (R. 41). Ms. Estrada explained that she typically visits her daughter on Monday or Wednesday evenings, and most of her hours are spent during an overnight

---

[9] Before Ms. Estrada's testimony began, her attorney corrected three errors in the record, noting: (1) that any reference to Ms. Estrada suffering from hepatitis was in error, (2) that the September 26, 2006 MRI report contained in Exhibit 21F was the mistakenly included MRI of someone else, and (3) that a computer error in Ms. Estrada's work history listed her earnings for a single year at $225,000, which was false (R. 34). However, the attorney noted that Ms. Estrada earned $15,189 at the Board of Education in 1997, a fact which he had neglected to mention in his memorandum (*Id.*). The attorney further noted that Ms. Estrada is no longer obese (R. 35).

16

stay (R. 42). Ms. Estrada stated that she helps her daughter by slowly and carefully doing laundry, preparing small meals, and vacuuming her daughter's apartment using a lightweight vacuum cleaner (R. 43). Ms. Estrada also stated that she slowly does her own cooking and cleaning at home (R. 42, 76). Ms. Estrada noted that, in the past, she was able to help her daughter out of her wheelchair, but can no longer do so (R. 43).

Ms. Estrada testified that she travels by arranging Pace service or walking short distances (R. 44, 74-77). Ms. Estrada explained that she stopped driving and taking regular public transportation nine months prior due to her back pain, though she retains a valid driver's license (R. 44, 49). Ms. Estrada stated that, by arranging Pace service, she will occasionally take her daughter to the store, grocery shop for herself, or attend a weekly bible study for one hour on Wednesday nights (R. 44, 74-5, 77). Ms. Estrada further stated that, after attending the early Mass on Sundays, she may walk two and a half blocks to visit her mother who lives nearby (R. 77). Ms. Estrada stated that she enjoys walking in the park, photographing her grandchildren, and trying to relax (R. 76-77). Ms. Estrada also mentioned that, on occasion, she will be asked to babysit her two grandchildren at her own apartment, but she can only do this for very short periods of time (R. 76).

Ms. Estrada testified that, even if paid by the State, she could not care for her daughter more than 15 hours per week because she cannot lift things or sit for extended periods (R. 56). Specifically, Ms. Estrada stated that she can only sit or stand for about 15 minutes at a time (R. 72-73). She stated that she can lift a two-liter bottle of soda or a gallon of milk (if she holds it close to her body) "with trouble" and some pain (R. 73). Ms. Estrada further stated that she can walk "maybe five blocks" before she gets tired and experiences muscle spasms (*Id.*). Ms. Estrada also stated that, with her OCD, she has just "too many thoughts" (R. 56).

17

Ms. Estrada testified that she sought treatment for her anxiety on various occasions beginning in 2006, but that her treatment had been interrupted when she lost her medical insurance and could no longer afford treatment at EFHC (R. 57, 64). She stated that she later resumed treatment after obtaining charity care at NMH (R. 64), but cognitive behavior therapy had offered little help for her OCD (R. 63).

Ms. Estrada testified regarding various medications. Ms. Estrada stated that she takes Valium for muscle spasms and Ativan (Lorazepam) to calm down, and was previously prescribed the sleep aid, Ambien (R. 59-60). She explained that she does not take any other psychotropic medications because she has allergies and sensitivity to the side effects of medication (R. 60-61). She testified that one psychotropic medication had given her suicidal thoughts (*Id.*). When the ALJ asked why Ms. Estrada had filled only one 15-tablet prescription for Lorazepam in the past two years and none for Valium (R. 61), Ms. Estrada explained that she could not take both Lorazepam and Valium at the same time, and the expense of the medications was prohibitive (R. 62). Ms. Estrada also stated that she in fact gets 30 tablets of Valium, and the medical examiner explained that both medications are "Diazepams" (R. 63).

With regard to back and leg pain, Ms Estrada testified that the management techniques she learned at the pain clinic are helpful, as are the three one-hour HEP sessions that she performs every day (R. 65, 68). Ms Estrada stated that she had completed a course of physical therapy at RIC (R. 64). Ms. Estrada further stated that she nevertheless continues to experience pain (R. 67).

Ms. Estrada described an incident in May 2007 when she slipped on water while shopping at Target and injured her lower back and right leg (R. 66-67). Ms. Estrada stated that she experiences pain and muscle spasms in her right leg, which are now transferring to her left knee (*Id.*).

18